BREAUX, C. J.
This suit was instituted to force the defendant to sell real estate referred to in the petition and to compel it to call in its loans and distribute a large amount of the surplus to its stockholders.
The plaintiff does not complain of the management of the corporation. She does not charge the board of directors with neglect of the business or with bad management of its affairs.
Substantially the only complaint is that the surplus should be reduced to a comparatively small amount.
She seeks to avail herself of the provision of the Gay-§hattuck bill (Act No. 176 of 1908), which prohibits corporations engaged in brewing and in distilling intoxicating liquors from obtaining a license for conducting a beer saloon or garden, or from being interested financially in any concern so engaged, or to be the owner or lessee or interested in any lease of premises used for such business.
As relates to the undivided surplus, her contention is that it is contrary to sound business principles to have so large a surplus; that it should be reduced by dividing it among the stockholders.
The capital stock of the corporation was $200,000, divided into 2,000 shares of $100-each.
Plaintiff owns 95 of these shares, and her husband 5 shares.
Defendant filed in evidence a full statement of its business, which makes a favorable showing of its condition.
The statement of defendant, sustained by the testimony, substantially is that large annual dividends have been declared since its organization in 1894.
That the plaintiff has received on her investment of $10,000 the sum of $54,500 — of this amount, $24,500 in dividends, and $30,-000 collected on bonds she received as a shareholder.
That her stock is worth $400 per share.
Plaintiff has not sought to deny the success of the business.
She only wishes the board of directors to add to the amount paid to her by dividing the surplus, and she also is concerned about the enforcement of the statute cited supra.
All the shareholders except the plaintiff and her husband intervened and joined the defendant in its defense.
Two distinct and separate questions present themselves, viz.: First, whether a stockholder can compel the board of directors to divide the surplus and declare another and second dividend of such amount as will, taken from the assets, leave in the corporation a considerably reduced surplus; and, in the second place, whether in this case and under the pleadings the plaintiff can force the board of directors to call in all of its outstanding loans and sell all the real estate not actually used in the manufacture of beer.
As relates to the company’s business: The uncontradicted evidence is that the pol *669 icy adopted by the board of directors was necessary to the success it has met.
The evidence further is:
That large dividends were declared because the amount retained for the business enabled the company to so operate on a scale as enabled it to realize large profits for which it has always accounted.
The contention of defendant further is that it would be hampered, if not ruined, in its business, were any other policy adopted than that which it follows.
This is not denied by plaintiff; the suit is directed to reducing and dividing the surplus, and incidentally the contention of plaintiff is that the statute before cited should be obeyed.
As to this statute, defendant’s contention is that all the contracts in which it entered with its customers antedate the date of the statute, and furthermore that it does not violate it.
At this point it is of some moment in the decision to state how the business is conducted and investments are made to which plaintiff objects and which she says is in violation of the cited statute supra.
The company bought real estate (corner lots, it is stated) for its customers before the date the Gay-Shattuck statute was adopted. The title was taken in its name. Much of the property defendant immediately after sold to its customers. A counter letter was given by the buyers who are customers of the company. The customer, vendee, pays daily, weekly, or monthly, and after he has paid the whole price with interest and taxes the property is the customer’s.
The testimony shows that $150,345.34 of the company’s assets were invested in real estate and were sold to customers as just mentioned.
Another method of business adopted by the company is the loan, particularly at that period of the year when customers are called upon to pay licenses to the tax collecting department.
These loans are secured by mortgage. They afford security for the sums advanced to customers, including the sums advanced to them to pay their licenses.
These methods of advancing money create a business tie between the brewery and its customers, the saloon keepers, and in that way the brewery controls a volume of business that it would not otherwise control.
If these methods be enjoined and prohibited, as prayed for by plaintiff, the allegation of defendant is that liquidation will be necessary.
We take up the question whether the court should interfere and compel the defendant to part with its surplus at the instance of one of the stockholders and vary in the policy which has heretofore resulted in its exceptionally favorable success.
We are not of opinion, as relates to the distribution of dividends, that there should be any interference by the court unless it is manifestly evident that interference is necessary in the interest of the corporation and its shareholders.
This court has always expressed unwillingness to interfere except where there was necessity as made evident by the testimony.
Even honest error will not be rectified if the probabilities are that the board will be equal to correcting its mistakes. State v. Bank of Louisiana, 6 La. 745.
In Marcuse v. Gin Co., 52 La. Ann. 1383, 27 South. 846, the court said:
“And the plaintiff has failed to consider to what extent the policy of extension and improvement, which he now condemns, has contributed to the making of the very earnings and profits which he now says should have been divided.”
The writers on the subject are equally as clear against the advisability of interference. Trimble v. American Sugar Refining Co., 61 N. J. Eq. 340, 48 Atl. 912.
*671 A large surplus does not justify interference. Burden v. Burden, 159 N. Y. 287, 54 N. E. 17.
It must be shown, in order to justify interference, that there is capricious, arbitrary, or discriminating management.
Only in proper case the court will interfere.
In the face of the good showing made of business management, there is no authority anywhere that would justify the court in •ordering that the management be taken from the board of directors ' to the extent sufficient to take from them — in opposition to their wishes — the surplus found and distribute it among the stockholders.
The surplus is that which remains after expenses and dividends. It adds to the stability and value of a business. The surplus, although it serves a useful purpose, would amount to little if it were within the reach of the whim and caprice of every stockholder.
The amount of surplus is due to the judicious management of the directors.
We have read a number of decisions upon the subject, in our and other jurisdictions. They invariably hold that only in case of evident necessity ought the courts substitute their judgment to that of the directors.
The complainant has failed to cite an act of the board of directors unfavorable to her interest.
Evidently the tempting surplus is the lure.
In considering the issues, .the conclusion is: Were it not for the surplus, there would be no complaint.
Without it, plaintiff would not have received the handsome return she has, and the shares she owns would not be of the value three or four times the amount of the investment.
In the second place, we are of opinion that plaintiff is concluded by her own act; in order to succeed in a court of justice, one must be ordinarily consistent.
Plaintiff reeeivéd amounts on her shares without a murmur. She shared in the profits. If there was error committed, she participated in the error and concluded herself.
If there is violation of police regulations, the state has her remedy, either civilly or criminally.
There is another consideration: This suit was brought against the corporation alone.
Its customers before mentioned, have acquired rights under the plan before referred to. They have a right of property. They cannot be interfered with without making them xiarties. Their interest ought not to be taken from them without a hearing. They form part of the plan of the business.
There are other grounds urged in the pleadings of plaintiff and in argument.
We pass them without comment. We restrict our decision to those specifically discussed.
Eor reasons assigned, the judgment is affirmed.
MONROE, J., concurs in the decree.