200 So. 330

## NICKELBERRY v. RITCHIE GROCER CO.
### et al.

No. 35918.

Jan. 6, 1941.

Rehearing Denied Feb. 3, 1941.

Hudson, Potts, Bernstein & Snellings, of Monroe, for applicant.

Theus, Grisham, Davis & Leigh, of Monroe, for respondents.

ROGERS, Justice.

Lee Nickelberry sued the Ritchie Grocer Company and the Aetna Casualty and Surety Company claiming compensation for total permanent disability. Plaintiff alleged that during the month of May, 1938, while lifting a heavy package, he noticed a shortness of breath; that he became ill and remained at home for about a week; that some time during the first week of July, 1938, while he was "lifting a heavy beam," he was "stricken with a violent smothering feeling, which was almost blinding in intensity," and had to drop the beam and sit down in order to catch

his breath and rest several minutes before he was able to resume work. Plaintiff further alleged that "the above described accident happened not only once but several times during the month of July, 1938, each time while your petitioner was lifting or moving some heavy object in the course of his employment; that said choking feeling became more intense each time until your petitioner was unable to do the work that he was employed to do;" and that on the 8th of August, 1938, his physical condition became such that he had to cease working.

Defendants answered, admitting that plaintiff was formerly in its employ, but denied that plaintiff met with an accident in the course of the employment. Defendant averred that plaintiff, because of declining health, voluntarily left its employ. Defendant further averred that plaintiff was suffering from an affliction of the heart and that the disease developed gradually and progressively and was not the result of an accident.

Plaintiff's demand was rejected in the district court and this judgment was affirmed by the Court of Appeal for the Second Circuit. The case is now before us for review on writs granted on plaintiff's allegation that the Court of Appeal refused to follow the rule that the aggravation of a preexisting disease is compensable.

The relator earnestly contends that the Court of Appeal erred in rejecting his demands on the authority of Kirk v. E. L. Bruce Company, La.App., 190 So. 840, and Lynn v. Arkansas Fuel Oil Company, La. App., 192 So. 764, instead of maintaining relator's demand on the authority of a number of cases which are mentioned in the opinion.

■ In the cases relied on by the relator, including Becton v. Deas Paving Company, Inc., 3 La.App. 683, Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450, and Richey v. Union Paving Company, La. App., 151 So. 657, the general rule is announced that if excessive heat, or heavy lifting, or straining, although usual and customary, or both, cause or contribute to a physical breakdown, or accelerate its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable.

■ In the Kirk and Lynn cases, it was correctly held that the plaintiff in a compensation case carries the burden of proof in the same manner as in other civil cases. In the Kirk case, plaintiff's claim for compensation was based on the charge that the particular cause of the fatal accident suffered by the employee was over-exertion and undue strain in his efforts to do his work, bringing on exhaustion, which overcame his heart. In the Lynn case, plaintiff's claim was based on the allegation that the employee sustained an accident as the result of the physical effort he put forth, coupled with the unusual high temperature in the defendant's boiler room. The demands of plaintiffs in both cases were rejected by the Court of Appeal on the ground that the plaintiffs had failed to prove any causal connection between the employee's death, in the one case, and the employee's injury, in the other case, with their employment.

The relator also complains that the Court of Appeal failed to discuss the legal effect of the proven fact that he was "working in intense heat of an abandoned cold storage vault, wet with sweat and exerting great physical effort at the time of the accident." But no such allegation was made in plaintiff's petition. While plaintiff and one of his witnesses testified, over defendants' objection, that it was hot inside the building where they were working, conceding that the testimony was admissible, we are not convinced that the temperature had any connection whatever with relator's present disability. In fact, plaintiff's witness, Pressley, testified that it was along in July at a time when "it was plum hot and we were working wet with sweat," but that they never paid any attention to that fact.

The record discloses that the relator, Lee Nickelberry, was employed by the defendant, Ritchie Grocer Company, as a common laborer on March 20, 1937. He ceased to work for the company on August 17, 1938, not on August 8, 1938, as alleged in the petition. He had previously worked for other concerns and had done hard, heavy, manual labor all his life. Until some time in February, 1938, he, together with others, was engaged in moving boxes, sacks and other heavy articles in and about the warehouse of his employer. He was then assigned to assist in tearing out the partitions in the building adjacent to his employer's place of business whch had been previously leased to the Cudahy Packing Company. Only a few workmen were employed to do the work, which was apparently done in a leisurely manner. The entire interior of the building had been torn out by the latter part of March, or the first part of April, 1938. Thereafter plaintiff assisted in cleaning up the yard and in helping the carpenters engaged in finishing the warehouse until about the month of August, 1938, when he sent word to his employer that he was ill. Subsequently, relator called on Dr. L. L. Titche to consult him professionally, relator having worked for Dr. Titche as a yardman and his wife then being employed as cook by Dr. Titche's family. After Dr. Titche examined plaintiff, he called in Dr. W. L. Bendel, who had no connection with the Ritchie Grocer Company or its surety company. Dr. Bendel found plaintiff suffering from a heart condition with an involvement of the liver and kidneys. He thought that relator's condition was of leutic or syphilitic origin and prescribed appropriate treatment. He also obtained a complete history and concluded that the heart trouble and its complications had come on gradually and progressively and were not connected in any way with relator's work.

With the idea of obtaining Government relief, relator, on March 14, 1939, called on the Ritchie Grocer Company for the purpose of obtaining a statement and recommendation. This was given to him. At that time relator did not claim that he had met with an accident or that his condition in any way was the result of his employment. Subsequently, after plaintiff had consulted with a lawyer, he again visited the Ritchie Grocer Company and asked to be re-employed. He was told that his job was available and he would be permitted to work for the company if he was physically able to do so.

However, on consulting Dr. Titche, who visited the Ritchie Grocer Company, the company was advised that relator's heart condition was such that it would be inadvisable for him to undertake the work. Up to this point, no claim whatever had been made by relator of an accident or for compensation. Such a demand was not made until later when it was made by plaintiff through his attorney.

On June 7, 1939, at defendant's request, plaintiff was examined by Dr. M. W. Hunter of Monroe, Louisiana. Dr. Hunter obtained the detailed history of plaintiff's case. This took place in the presence of plaintiff's counsel. After Dr. Hunter had examined plaintiff, he made a report giving the history of the case in detail and stating that Nickelberry had not given any history that would make him believe that Nickelberry's heart condition was accidental in its nature. A copy of this report was sent to plaintiff's counsel, and apparently no exception was taken to the facts set forth in the history that was incorporated in the report.

There is nothing in plaintiff's petition to show that he suffered an unexpected breakdown of any of his organs, thereby causing disability. The only allegations of the petition which relator claims disclose an accident occurred are, that in the latter part of the month of May, 1938, he experienced a shortness of breath and that he became ill and remained so for approximately a week in the latter part of May or the first part of June, 1938, as a result of the continued lifting and straining necessary to perform the duties of his employment. That during the first week of the month of July following, by lifting a heavy beam he was stricken with "a violent smothering feeling, which was almost blinding in its intensity," and that he had to drop the beam and sit down in order to catch his breath and rest several minutes before he was able to resume work. That several times during the month of July while he was lifting or moving some heavy object in the course of his employment, he experienced a choking feeling, which became more intense each time, until he was unable to do the work he was employed to do. Nowhere in his petition does plaintiff allege or claim that the falling of the beam or the lifting of heavy objects at the time stated caused injury to his heart or accelerated a pre-existing disease of that organ.

Relator, testifying in his own behalf, stated that he experienced the weight of a large timber which fell on him when the timber, used for shoring a cooling tower on top of the building, slipped. Plaintiff's statement was not satisfactorily corroborated and was inconsistent with some of his former statements. Plaintiff and his witness, Pressley, testified that this occurred in the month of July, 1938, when the defendants' records and the testimonial proof pertinent thereto show conclusively that the heavy work referred to by these witnesses was completed prior to April 1, 1938.

Relator continued to perform his usual manual labor for several months after experiencing the straining on which he bases the contention that he suffered an accident.

The Ritchie Grocer Company had no notice that the plaintiff claimed he was injured while in its employ until more than a year after the date it was claimed the injury occurred. In this situation, defendants contend they were not in a position to offer any positive testimony regarding the alleged accident. At any rate, in support of their defense to the suit, defendants relied on prior statements made by the plaintiff, the improbability of his claim, the history of the progress of the disease from which he was suffering, as given by plaintiff himself, and the testimony of the physicians who were called in the case. Defendants established the date that plaintiff was working in the warehouse and used as a witness Dr. W. L. Bendel, who examined plaintiff in August, 1938, and Dr. M. W. Hunter, who examined plaintiff in June, 1939. Both doctors testified that plaintiff was disabled but that his disability had come on gradually and progressively and was not caused by connected with his employment. On behalf of plaintiff, Dr. C. P. Gray testified that plaintiff was suffering from a diseased heart and that such a condition might be aggravated by a sudden strain or over-exertion, but Dr. Gray, who could not recall that he had been furnished with a history of plaintiff's case, did not testify positively that plaintiff's present condition was caused by his handling of heavy objects. On the other hand, as stated, Dr. Bendel who, the record shows, has had an unusual amount of experience in compensation cases, was positive that plaintiff's ailments and disability, in view of the history given him and of his findings, were not traceable to an accident. As stated by the Court of Appeal, he intimated that he regretted being forced to reach this conclusion.

All the physicians who testified in the case concur in the conclusion that plaintiff's condition is the result of the progress of the original disease, the beginning of which possibly dates back a year or more.

The case therefore presents a situation where the plaintiff admittedly is suffering from a disease of the heart. When the disease began, what was its origin, and the rapidity with which it has progressed, are all matters of pure speculation. The mere fact that a workman develops heart disease while employed by another does not entitle him to compensation. The employer is not the insurer of his employees. There must be an accident to furnish the basis of any such claim, that is to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the disease which is the cause of the disability.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

O'NIELL, C. J., does not take part.