JANVIER, Judge.
Plaintiff is a colored laborer, over 70 years of age. He avers that, during the course of his employment by J. Watts Kear-ny and Sons, when “he was attempting to lift a heavy bag of cement,” he “felt a sharp, shooting pain in his right side”; that as a result, although he attempted to continue his work for several days, he was unable to do so; that “his condition was diagnosed as a right inguinal hernia,” and that he is now totally and permanently disabled. He brought this suit against the Travelers Insurance Company alone, the insurance carrier of his employer, and he prayed for judgment for $27.43 per week for 400 weeks.
The defendant admitted that it is the insurance carrier of the employer, but averred that the plaintiff had sustained “no accident whatever in the scope and course of his employ,” and denied liability.
From a judgment in favor of plaintiff for $22.43 per week for 400 weeks and taxing as costs a fee of $50 of a medical expert, defendant has appealed.
There is no doubt at all that plaintiff is now suffering from a hernia which prevents his engaging in the heavy labor in which he was previously engaged. Dr. Maurer, the only medical expert who testified, said: “Pie has a large right scrotal hernia, down into the sac that holds the testicles.”
The doctor was asked: “ * * * could a man with a hernia such as the one Jim Watts has perform heavy work, consisting of lifting up hundred-pound sacks one right behind the other steadily and continuously? Do you think he could fill any job like that any length of time ?” He answered : “No; he can’t do that kind of work— not with a scrotal hernia. If he had a 'small inguinal hernia, with a proper-fitting truss, he could. I have seen them do it.”
The record shows that at the Charity Hospital it was found that the plaintiff was suffering from a (“rt. indirect ing hernia”) which we are told means a right indirect inguinal hernia. According to the records of the hospital, he signed the necessary consent for the operation which was advised, but it was not performed because he was “unable to obtain blood donor.”
The rate of pay at the time at which he claims the accident occurred was 80^ per hour, and it is stipulated that, in the event of recovery, plaintiff is entitled to $22.43 per week.
Defendant does not seriously contend that plaintiff’s condition is not as already set forth in this opinion, but strenuously complains that no accident occurred and that plaintiff had, for years prior to the-alleged accident, suffered from the same hernia from which he now suffers.
Defendant contends that plaintiff should not be believed when he says that he had not before suffered from “trouble with”' his “side”, for the reason that he deliberately attempted to conceal the fact that he had for jrears before suffered from a hernia.
It is true that the plaintiff did testify that he had never before suffered with-his side, and it is also true that, at least since 1941, he had suffered with a right indirect inguinal hernia. The records of the Charity Hospital so indicate. In fact, it appears that at some time between June 30 and July 7, 1941, he had been treated for a right inguinal hernia at the Charity. Hospital and that he had been required to-return to the hospital for further treatment on several occasions. It is -also true that, when he went to the hospital after the alleged accident on which this suit is based,, it was found that he had had “a reducible hernia for some time.” And the record, also contains the following statement: “This patient has had a history of indirect inguinal hernia since 1940 but has had no-surgery work up to date.”
Counsel for the defendant point to these facts and argue that since plaintiff should not be believed when he testified that he had not previously suffered from a hernia, he should not 'be believed in any of his statements. Counsel also contend that recovery should not be allowed for the reason that plaintiff did not base his suit on the aggravation of a preexisting condition but based it solely on the allegation that the- *603 hernia in its entirety had been sustained in this accident.
The district judge believed that the plaintiff had not deliberately concealed the fact •that he had previously suffered with a ’.hernia and that, as a matter of fact, the ■plaintiff did not actually know that, on his ■previous visits to the hospital in 1941 and 1942, it had been disclosed to him that he was-suffering with a hernia. On this point the district judge, in his reasons, says:
“The Charity Hospital report introduced by the defense shows that in 1941 the plaintiff went to the hospital complaining .of aching joints, coughing and fever. The final diagnosis reflected by the record was lobar pneumonia. The plaintiff was hospitalized and treated for his illness. The ■record also reflects that after a complete •examination he was found to have prostate vtrouble and an indirect inguinal hernia.
“He testified that he did not know and was not advised that he had a hernia in 1941, and the Court believes his testimony.”
We can well understand that the plaintiff did not know that, on his former visits to the hospital, it had been discovered that he had a hernia, for the records them•selves show that he did not go to the hospital because of any such hernia, but went there because he was suffering from numerous diseases. In fact it was only ■near the end of some eleven pages of closely written hospital reports that there appears an entry showing “Rt. inguinal hernia” — “Prostatic massage.”
The plaintiff himself said that, as a matter of fact, prior to the occurrence on which this suit is based, he had never •even heard the word “hernia.”
One thing stands out clearly and that is, that prior to the day on which the alleged accident is said to have occurred, plaintiff had worked steadily at hard labor. His record with his employer showed that he worked regularly, and his weekly rate of pay indicates that in almost every week he drew pay for forty -hours. The district judge, on this feature of the case, said: “Further, the Court believes that his record as a workman for the Kearny concern for four years prior to the date of the accident complained of in the pleadings, would necessarily bear out his contention that he did not know that he had a hernia in 1941, and that the first time he became aware of the fact that he did have a hernia was the Fall of 1949.”
It is very evident that he can do no such work at this time.
Obviously something occulted which so altered his physical condition that he can no longer do the work in which he was previously employed. If, prior to that time, he had a right inguinal hernia, it i-s obvious that it did not interfere with his ability to do the heavy work required of him. While we do not in the record find any explanation of the difference between a right indirect inguinal hernia, which he seems to have had prior to the accident, and a “large right scrotal hernia” which he seems to suffer from at this time, we feel that it does not require medical testimony to show that his present condition is much more serious than was his condition before the occurrence of the alleged accident.
Nor do we agree with counsel for defendant that plaintiff should not recover because he bases his suit on the allegation that the hernia was sustained at the time of the accident, whereas the evidence shows at most that the accident, if there was one, merely accentuated or brought to light a previously existing condition.
In alleging that an accident occurred and that, as a result, he now suffers from a hernia which prevents his continuing the work in which he was previously engaged, we think he has made sufficient allegation to permit him to prove that, although he previously suffered from a hernia, the aggravation which resulted from the accident has now caused his complete disability.
In Elmore v. Avoyelles Wholesale Grocery Co., La.App., 14 So.2d 684, 686, our Brothers of the Second Circuit were presented with a somewhat similar situation. The Court quoted from Nickelberry v. Ritchie Grocer Company, 196 La. 1011, 200 So. 330, as follows: * * * if excessive heat, or heavy lifting, or straining, although usual and customary, or both, cause or contribute to a physical breakdown, or *604 accelerate its happening, the legal requirements necessary to constitute an accident are present and such cases are compen-sable.”
Counsel for defendant confidently point to Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131, 133, as authority for the position they take here. There it was contended by the defendant that the plaintiff, prior to the occurrence of the alleged accident, had suffered from the same hernia which he no doubt was suffering from after the accident. The Court held that the accident had been the cause of the hernia from which disability resulted and that there should be recovery, and counsel for defendant contend that that decision resulted from the fact that the only evidence to the effect that the plaintiff, previous to the accident, had suffered from hernia, was the “opinion” of a physician that the hernia was not of recent origin, whereas in the case at bar it does not depend upon the opinion of a physician that the hernia existed previous to the accident, but upon the hospital records which actually show this to be the case. As a matter of fact, in the Hogan case, the Court did not base its decision on the question of whether or not the hernia had existed previously, but said that regardless of whether there had been a previous hernia, obviously the condition of the plaintiff had deteriorated as a result of the accident to such an extent that, after its occurrence, he could not do the work which he had previously done. The Court said: “ * * * It makes no difference whether the hernia was caused entirely by the accident or the accident caused the rupture of a potential hernia. In either evefit, the plaintiff would be entitled to recover compensation.”
Interestingly enough, on the question of whether the plaintiff in that case knew that he had previously suffered from a hernia, the Court said: “* * * We entertain doubt that the plaintiff, an illiterate colored man, knew whether he had a potential hernia or not prior to the accident.”
In Starkey v. Bechtel-McCone Corporation, La.App., 27 So.2d 459, 462, a somewhat similar situation was presented, and the Court held that the plaintiff was not entitled to compensation, but did so because it found that the hernia from which the plaintiff suffered after the accident was the identical hernia with which he had previously suffered. The Court said: “We find therefore that the preponderance of the testimony is that this plaintiff had a hernia when he was examined by the doctors in August or September, 1944, and that the hernia he had when he was again examined in March and May, 1945, was the same hernia that he had been having.”
In Young v. Hillyer, Deutsch, Edwards, Inc., La.App., 152 So. 89, the district court held that the plaintiff could not recover because after the accident he had the same hernia which he had had before and that his condition had not been changed or aggravated.
The record in this case leaves us with the conclusion that, though the plaintiff had suffered previously with a hernia of some sort, he was able to continue working and did work for many years, and that after the accident he could no longer do the same work. Our conclusion is that he is totally and permanently disabled and that the judgment awarding him compensation at $22.43 per week 'for 400 weeks is correct.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.